# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BETTIE DAVIS**
**on behalf of DOMINQUE ALLEN,**

    **Plaintiff,**

  vs.                                      **Case No. 02-C-879**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

On May 27, 1997, Gregory Allen ("Allen") filed claims for disability insurance benefits and supplemental security income ("SSI") alleging that he became disabled on February 24, 1997.[1] On August 7, 1999, while Allen's claims were pending before the Appeals Council, Allen died. Bette Davis ("Davis"), on behalf of Allen's surviving minor child, Dominque Allen ("Dominque"),[2] was substituted as the claimant before the Appeals Council. Pursuant to 42 U.S.C. § 405(g), Davis filed this action for judicial review of the final decision of Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner") denying the claims.

On December 20, 2004, United States Magistrate Judge Aaron E. Goodstein issued a thorough 15-page recommendation for a remand of the matter for an award of disability insurance benefits and SSI. Judge Goodstein identified various errors and

---

[1]Previously, Allen filed applications for disability insurance benefits and SSI alleging disability as of November 3, 1991. Those applications were denied at the administrative level and were not further pursued. *See* Tr. 20.

[2]In this decision, for the purposes of clarity, the Court has referred to Allen's son and Allen's sister, who also have the last name "Allen," by their first names.

concluded that the Commissioner's final decision was not supported by substantial evidence. The Commissioner's final decision of non-disability was made at step five of the sequential analysis for social security disability cases, which involves a determination of whether there are a significant number of jobs available to a claimant given the relevant vocational factors, including the claimant's residual functional capacity. *See Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004).

Specifically, Judge Goodstein determined that the Administrative Law Judge's ("ALJ") step five finding that, given the relevant vocational factors, there were a significant number of select janitorial jobs in Wisconsin (where Allen resided) which Allen could perform, lacked the support of substantial evidence. (Recommendation to Chief J. Rudolph T. Randa on Pl.'s Appeal of the Decision of the Social Security Commissioner ("Recommendation") at 4.) Judge Goodstein so concluded, citing the ALJ's deficient handling of the testimony of the vocational expert, Joseph L. Thompson ("Thompson"), and the ALJ's related failure to provide an explanation for the lack of weight given to the report of Michael Wierbicki, Ph.D., ("Wierbicki") who conducted a psychological examination of Allen at the ALJ's request. (*Id*.) Additionally, Judge Goodstein determined that the ALJ failed to adequately explain the lack of weight that he accorded the opinion of Allen's treating physician, Gabriel Szekely, M.D., ("Szekely") (*Id*.) Finally, Judge Goodstein found that the ALJ's credibility determination as to Allen is not supported by substantial evidence. (*Id*.)

The Commissioner has filed objections to the Magistrate Judge's recommendation, contending that the ALJ properly relied upon the hypothetical questions which incorporated the ALJ's residual functional capacity assessment. The Commissioner also asserts that the ALJ properly evaluated Wierbicki's opinion, "reasonably evaluated" Szekely's evidence, and that substantial evidence supports the ALJ's credibility

determination.  Moreover, the Commissioner states that if this Court concludes that substantial evidence does not support the ALJ's decision, then remand for further proceedings, not an award of benefits is appropriate despite the fact that Allen is deceased.

Davis opposes the objections raised by the Commissioner on various grounds. She also contends that remand of this case for an award of benefits is appropriate under *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 800 (E.D. Wis. 2004), because the record overwhelmingly supports a finding of disability.

Where a party timely objects to a recommendation of a magistrate judge, the Court must review *de novo* the aspects of the recommendation to which either party has timely objected, *see* 28 U.S.C. § 636(b)(1)(c); *United States v. Raddatz*, 447 U.S. 667, 673-76 (1980), and may review *de novo* any other aspects as it deems appropriate, *see Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986).

*The ALJ's Decision*

In relevant part, the ALJ found that Allen, who had dementia (secondary to head trauma), a seizure disorder, and alcoholism, could not perform his past relevant work but had the residual functional capacity to perform simple, routine repetitive work activity. Allen's residual functional capacity also excluded working at unprotected heights or near moving equipment or machinery. In addition, Allen could only occasionally climb and balance. He could only have limited contact with coworkers and supervisors. Further, the ALJ determined that Allen would need two unscheduled ten-minute breaks per week in place of other scheduled breaks.

The ALJ found that Allen's testimony regarding his restrictions and limitations was "highly questionable." The ALJ noted that the claimant's sister, Sandra Allen ("Sandra") proved to be a better historian, but that her testimony was not conclusive on the issue of whether or not Allen continues to abuse alcohol because Allen had concealed his use

of alcohol from her and others in the past. The ALJ concluded that Allen did not have the residual functional capacity to perform his past relevant work. However, the ALJ also found, relying upon the vocational expert's testimony, that Allen could perform a significant number of "select janitorial jobs" within the state of Wisconsin, where Allen resided.

*Standard of Review*

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g). "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Young*, 362 F.3d at 1001. The ALJ must "build a logical bridge from the evidence to his conclusion," *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002), and "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004), but he need not "provide a 'complete written evaluation of every piece of testimony and evidence.'" *Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)).

*ALJ's Reliance on the Vocational Expert's Responses to Hypothetical Questions and Evaluation of Treating Physician and Consultant Evidence*

If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the vocational expert must incorporate all of the claimant's limitations supported by medical evidence in the record. *Indoranto*, 374 F.3d at 474 (citing *Young*, 362 F.3d at 1003; *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003); *Steele*, 290 F.3d at 942). During the August 11, 1998, hearing, the ALJ presented three hypothetical questions to vocational expert Thompson. In the first hypothetical question, the ALJ asked Thompson to assume a worker 43 years of age; a high school education; capable of only simple, routine, repetitive work; who should not be exposed to any unprotected heights, moving equipment; may only occasionally engage in climbing or balancing; and, who should have only occasional contact with co-workers, the public or supervisors. Thompson responded that

–4–

there were about 10,000 hand packaging positions (a reduced number from the total amount in the national economy) and about 20,000 select janitorial positions, involving assignment to a particular area of a building.

The second hypothetical question asked that Thompson assume all the limitations of the first hypothetical question and to add the additional restriction of two unexcused absences per month. Thompson stated that there would be no positions applicable because two absences per month would exceed an employer's requirement for maintaining any kind of consistent effort.

The third hypothetical question presented to Thompson asked him to consider the same limitations of the first hypothetical with the added factors of two ten minute unscheduled breaks each week in lieu of regularly scheduled breaks. Thompson indicated that the selected janitorial jobs would be available, but not the hand packaging jobs.

In finding that there were a significant number of select janitorial jobs which Allen could perform, the ALJ relied upon the limitations set forth in the first and third hypothetical, but not the second hypothetical. The ALJ did not discuss the second hypothetical. However, the second hypothetical is supported by Dr. Szekely's residual functional capacity evaluation and Dr. Wierzbicki's consultative examination. And, the ALJ did not articulate his basis, if any, for discounting that the evidence indicating that Allen would be likely to have no more than two seizures per month, which in turn would result in two absences per month. While an ALJ is not bound by the determination of a consultative examiner or a treating physician, the ALJ may not be selective in his discussion of the evidence.

An ALJ need not "provide a 'complete written evaluation of every piece of testimony and evidence,'" *Schmidt*, 395 F.3d at 745, but, an ALJ is required to "articulate, at some minimum level, [his] analysis of the evidence." *Boiles v. Barnhart*, 395 F.3d 421,

–5–

425 (7th Cir. 2005) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). The ALJ failed to do so. At step five of the sequential analysis the burden is on the Commissioner to establish that there are a significant number of jobs, other than the claimant's past relevant work, that the claimant can perform. *See Young*, 362 F.3d at 1000. The Commissioner failed to meet that burden and therefore, her decision that Allen is not disabled is not supported by substantial evidence.

*Credibility Determination*

An ALJ's credibility determination is due special deference, *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004), and will not be overturned unless it is "patently wrong" and not supported by the record. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004). Here, the ALJ stated some reasons for discounting Allen's testimony and giving greater credence to the majority of Sandra's testimony – he stated that Sandra was a better historian.

The ALJ also noted that Drs. Szekely and Wierzbicki documented problems with Allen's memory and mental confusion. (Tr. 23.) There is an indication that Allen's dementia impaired Allen's mental abilities. As found by the ALJ, the dementia limited Allen to simple, routine, repetitive work. (Tr. 24.) The ALJ's credibility determination also notes that Allen's testimony contained a history of changed dates and circumstances. (*Id.*)

Despite such discussion, as noted by Judge Goodstein, the ALJ's credibility determination neither mentions Social Security Ruling ("SSR") 96-7p, which sets forth the factors which an ALJ must consider in making a credibility determination, nor does it include

consideration of the factors as required by that ruling.[3] *Zurawski v. Halter,* 245 F.3d 881, 887-88 (7th Cir. 2001). The ALJ is required to comply with SSR-96-7p. *Id.*

*Remedy*

In seeking a remand and award of benefits, Davis relies upon *Worzella*, 311 F. Supp. 2d at 800, which states:

> Ordinarily, when a district judge reverses an ALJ's decision the appropriate remedy is a remand for further proceedings. *Gotz v. Barnhart*, 207 F. Supp. 2d 886, 901 (E.D. Wis. 2002). This is so because of the respective roles of the ALJ and the court: it is the ALJ's job to weigh the evidence, resolve conflicts, and determine whether the claimant is disabled; the court's task is to determine whether the ALJ's decision was supported by substantial evidence and free of harmful legal error, regardless of whether the court would have reached the same conclusion in the first instance. *See*, *e.g.*, *Uphill v. Barnhart*, 271 F. Supp. 2d 1086, 1094 (E.D. Wis.2003).
>
> However, there are two exceptions to the general rule: (1) where the record overwhelmingly supports a finding of disability; and (2) where the delay involved in repeated remands has become unconscionable, or the agency has displayed obduracy in complying with the law as set down by the court. *Gotz*, 207 F. Supp. 2d at 901-03.

---

[3] Social Security Ruling 96-7p states:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and § 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

It is not the role of this Court to weigh the evidence. The remand is based on the ALJ's failure to articulate his consideration of the second hypothetical, in conjunction with the opinions of Drs. Szekely and Wierzbicki, with respect to the frequency and effects of Allen's grand mal seizures, which could result in two unexcused absences a month. The ALJ must also further articulate his determination of Allen's credibility in accordance with SSR 96-7p.

The determination of whether Allen was disabled at the time of the ALJ's final decision will clearly be a close decision, but since the record does not overwhelmingly establish disability this Court does not deem it appropriate to remand for an award of benefits. Therefore, this matter is remanded for further proceedings consistent with this opinion. *See Young,* 362 F.3d at 1005; *See also*, *Boiles*, 395 F.3d at 427; *Barrett v. Barnhart*, 355 F.3d 1065, 1069 (7th Cir. 2004).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision denying Allen's applications for disability insurance benefits and SSI based upon Allen's May 27, 1997, benefit applications alleging he was disabled as of February 24, 1997, is reversed and this matter is remanded to the Commissioner for further proceeding consistent with this opinion. The Commissioner's final decision, at step five of the procedure for the sequential analysis of social security cases, that Allen was not disabled because he could perform a significant number of select janitorial positions within Wisconsin, is not supported by substantial evidence.

This action is **DISMISSED**, and

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 22nd day of September, 2005.

**BY THE COURT**

**s/ Rudolph T. Randa**
**Hon. Rudolph T. Randa**
**Chief Judge**